24858. BRADLEY *v.* THE STATE.

DECIDED DECEMBER 6, 1935.

*Percy A. Bray,* for plaintiff in error.
*Fred D. Neel, solicitor,* contra.

MACINTYRE, J. W. J. Bradley Jr. was convicted, in Bartow County, of the offense of abandoning his minor child. His motion for new trial was overruled, and he excepted. The testimony for the State was, in effect, as follows: The defendant and his wife had been living together as husband and wife in Macon, Bibb County. Of said marriage one child was born. On April 27, 1933, the wife of the defendant (mother of his minor child) was forced by the husband to leave her home in Macon. She testified: "I came to Adairsville in this [Bartow] County in April, 1933. It was at the same time I was forced to leave his home in Macon. I came because it was the only place to go. He furnished

support for the child until October, 1933; then he paid $5 in January, 1934; that's all I have received. I came to the county in April, 1933. He furnished support until October of that year. I am still living in Adairsville. I got my final divorce decree from him in May, 1934; and since October, 1933, he has furnished only $5 for the support of the child. On October 4, 1933, he paid me $12.50; and then in January, 1934, I was paid $5. Alimony was awarded for the support of the child until the child was 21 years of age." The mother, ever since the separation, has lived in Bartow County. She filed against her husband an alimony suit, sworn to on May 25, 1933, in the Bibb superior court, alleging that she was a resident of Bartow County. The defendant supported the minor child from April, 1933, until October 4, 1933. On October 3, 1933, an agreement was entered into between the father and the mother, "that the allowance for temporary alimony shall continue as heretofore provided in the previous order of this court—$35 per month while the minor child is with the mother and $25 per month while it is with the paternal grandparents," and that the custody of the child should remain in the mother, with the right to the paternal grandparents to have the child visit them three months in each year until the child reached an age to be placed in school, the first visits to be during October, November, and December, 1933, the mother to deliver the child for said visits to the paternal grandparents on October 4, 1933; that the child was to be returned to the mother on January 1, 1934, without expense to her. This agreement was made the judgment of the court on an interlocutory hearing. The mother testified, that the abandonment of the child began in Bartow County; that she had been paid alimony for herself and child from April, 1933, to October, 1933; that when the support of the father ceased the child was on a three-months visit to the paternal grandparents in Macon, Bibb County; that on October 4, 1933, the day after the aforesaid agreement was entered into between the mother and father, and apparently in pursuance thereof, the defendant paid $12.50, and the child began to visit the paternal grandparents in Macon; that during November, 1933, the defendant left Macon and went to Florida; that the defendant's mother wrote to his wife, in November, 1933, to come and get the child, stating that the defendant had disappeared, and she thought the

child was sick; that the mother went to Macon and got the child in December, 1933; that the mother received no money from October 4, 1933, to January, 1935, when she received $5, which "was paid to Mr. Feagan, my lawyer. It was paid directly to him. He merely handed over $5 to me, and said Mrs. Bradley (the defendant's mother) said her son sent me $5; that's all I know. Mr. Feagan handed me $5, or rather handed it to my brother-in-law in Macon. It was sent to me."

1. The defendant contends that the State did not show that the venue of the crime was in Bartow County; that if a crime was committed, the venue was in Bibb County. The defendant's counsel, in a colloquy with the court, contended that the desertion took place between October 4, 1933, and December, 1933. It seems to us that the evidence would authorize a finding by the jury that the mother was forced to leave her home in April, 1933, and went directly to Bartow County. On or about May 25, 1933, she filed the alimony suit. The record is not definite as to when the order for the payment of temporary alimony on this suit was passed, but it was prior to October 3, 1933; for on October 3, 1933, there was executed the agreement between the parties, making a part of an agreement a previous order of the court for temporary alimony for the benefit of the mother and the child, which agreement also incorporated other matters with reference to the child. This agreement on the same day "was made the judgment of the court on interlocutory hearing." Thus the last order became a consent order. Thus the defendant agreed, on October 3, 1933, to pay said amounts for the support of the child, and on the next day, October 4, 1933, did make a payment of $12.50, and thereafter he failed to make any payments for the support of the child, unless it be said that the $5 sent by the paternal grandmother in January, 1934, was such a payment. The child and the mother had lived in Bartow County since April, 1933. The father had supported the child until October 4, 1933; and while the child was still living with its mother in Bartow County, but visiting its paternal grandparents in Bibb County, the defendant disappeared and ceased to contribute to the support of his child; and his parents so notified his wife, and told her to come and get the child, which she did. Thus the evidence authorized a finding that the dependency of the child began while the child and its mother were

living in Bartow County; and the jury would be authorized to say that the venue of the crime was in that county. *Ware* v. *State, 7 Ga. App.* 797, 799 (68 S. E. 443), and cit.; *Nunn* v. *State, 39 Ga. App.* 643 (148 S. E. 165). The fact that the child was on a three-months visit to the grandparents in Bibb County at the time that the father disappeared and ceased to support the child would not necessarily demand a finding that the offense was committed in Bibb County. It seems to us that the venue of the crime was in the county where the mother and the child resided at the time the dependency began, rather than in the county where the child was visiting the grandparents, although the dependency might have begun at a time while the child was on the visit. *Garrett* v. *State, 41 Ga. App.* 545 (153 S. E. 628), and cit.; *King* v. *State, 12 Ga. App.* 482 (77 S. E. 651); State *v.* Hooker, 186 N. C. 761 (120 S. E. 449); State *v.* Stone, 111 S. C. 496 (98 S. E. 333); State *v.* Peeples, 112 S. C. 310, 311 (99 S. E. 813).

The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*